IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20CV293-GCM

| | | |
|---|---|---|
| BROOKDALE SENIOR LIVING INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| RACHEL ELISE WEIR, as Executrix of the | ) | |
| Estate of Jean Howard, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court upon Defendant/Counter-Plaintiff's Motion to Stay

Proceedings and Compel Arbitration, filed April 1, 2021. The Plaintiff/Counter-Defendant has

responded and no Reply has been filed. A hearing was held in this matter on July 29, 2021.

## I.     FACTUAL BACKGROUND

Brookdale Senior Living Inc. ("Brookdale") owns and operates assisted living facilities.

Defendant/Counter-Plaintiff herein ("Weir") is the Administrator of the Estate of Jean Howard,

who was a resident at an assisted living facility in Charlotte, North Carolina owned and operated

by Brookdale. In April of 2020, Weir[1] served Brookdale with a Class Arbitration Demand

seeking damages on behalf of the Estate and a class of similarly situated individuals for unfair

and deceptive trade practices, breach of contract, unjust enrichment, and intentional interference

with a contractual relationship. *See* Doc. No. 1-5. Defendant alleges in the underlying arbitration

that Brookdale targeted frail and elderly individuals requiring daily assistance with two or three

activities of daily living and systematically and deceptively lead them and their families to

---

[1] Gary Wier, the individual originally appointed to administer the Estate of Jean Howard, passed away on May 22, 2020. Rachel Elise Wier was designated as the Estate's successor executrix and was substituted as the Plaintiff herein.

1

believe that Brookdale would provide enough staff to meet the collective care needs and daily living services of its resident populations. *Id.* Defendant alleges that Brookdale systematically fails to fulfill that promise by chronically understaffing its facilities pursuant to corporate-driven and uniform staffing policies and practices. *Id.*

The Residency Agreement, drafted by Brookdale, contains the following mandatory Agreement to Arbitrate:

> Any and all claims or controversies arising out of, or in any way relating to, this Agreement or any of your stays at the Community, excluding any action for involuntary transfer or discharge or eviction, and **including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement**, whether arising out of State or Federal law . . . irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration . . . and shall not be filed in a court of law. **The parties to this Agreement further understand that a judge and/or jury will not decide their case.**

Doc. No. 1-1, p. 8 (emphasis in original and added).

On May 26, 2020, shortly after being served with the Class Arbitration Demand, Brookdale filed its two-count Complaint for Declaratory Relief, seeking (1) a declaration that Defendant is precluded from pursuing any claims in arbitration on behalf of any purported class, and (2) an injunction enjoining Defendant from initiating or proceeding with any arbitration of claims against Brookdale on a class, collective or group basis. Doc. No. 1. Weir filed an Answer, Affirmative Defenses and Counterclaim on December 22, 2020. The Counterclaim seeks a declaration that Brookdale forfeited its right to nominate an arbitrator by failing to do so within 20 days of receiving the Class Arbitration Demand, as required by the Arbitration Clause in the Residency Agreement.[2]

---

[2] The Arbitration Clause specifies the procedure for selecting the arbitrator as follows:

2

Doc. No. 18. The Counterclaim also seeks a declaration that the arbitrator that will oversee the arbitration is to be appointed solely by Weir's nominee. *Id.*

Weir has moved to stay this case and compel arbitration, arguing that the arbitration provision clearly and unmistakably vests the authority for deciding questions of arbitrability with the arbitrator and not the Court. This includes the gateway question of whether class-wide arbitration is available under the Parties' Agreement. Brookdale contends that the question of whether Weir may proceed in class-wide arbitration is for the Court to determine.

## II.     DISCUSSION

The Federal Arbitration Act provides written contracts to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This strong language manifests a "liberal federal policy favoring arbitration agreements." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, courts are directed to "rigorously enforce agreements to arbitrate." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal quotation marks omitted) (citation omitted).

Within this framework, the Supreme Court has repeatedly held that parties to an agreement to arbitrate "may agree to have an arbitrator decide not only the merits of a particular dispute, but also gateway questions of arbitrability." *Henry Schein, Inc. v. Archer & White Sales,*

---

The arbitration panel shall be composed of one (1) arbitrator. Subject to the requirements section A.6 [precluding bias], the parties shall agree upon an arbitrator that must be a member of the North Carolina Bar with at least ten (10) years of experience as an attorney. If the parties cannot reach an agreement on an arbitrator within twenty (20) days of receipt of the Demand for Arbitration, then each party will select an arbitrator. These arbitrators will act only for the purpose of appointing a sole arbitrator to hear the case, subject to the criteria above. **If either party fails to select their arbitrator within the (20) [sic] days mentioned above, they effectively forfeit their right to choose an arbitrator.**
Doc. No. 1-1 at 9, § V.A.5 (emphasis added).

3

*Inc.*, 139 S. Ct. 524, 528 (2019) (internal quotation marks omitted) (citation omitted); *see Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-9 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). When faced with a valid delegation clause, the court is required to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues. *Rent–A–Center*, 561 U.S. at 68–69. The Fourth Circuit has routinely recognized this principle, explaining that questions of arbitrability will be delegated to the arbitrator when the agreement "'clearly and unmistakably' provide[s] that the arbitrator shall determine what disputes the parties agreed to arbitrate." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012) (citation omitted); *see also Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) ("Of course, parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'"). Thus, "arbitrability disputes often necessitate a two-step inquiry," and the first step is to "determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court." *Peabody Holding*, 665 F.3d at 101 (emphasis in original).

Although the Supreme Court has not decided if the question of whether parties have agreed to class-wide arbitration is a "gateway" issue of arbitrability or a procedural issue to routinely be left to the arbitrator, all circuits that have addressed the question, including the Fourth Circuit, have held that "the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved for judicial determination unless the parties clearly and unmistakably provide otherwise." *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) (internal quotation marks omitted); *see 20/20 Communs., Inc. v. Crawford*, 930 F.3d 715, 718-19 (5th Cir. 2019); *JPay, Inc. v. Kobel*, 904 F.3d

4

923, 926 (11th Cir. 2018) ("the availability of class arbitration is a 'question of arbitrability'"); *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 506–07 (7th Cir. 2018); *Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972 (8th Cir. 2017); *Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016) (holding that "whether an arbitration clause permits class arbitration is a gateway question of arbitrability"); *Opalinski v. Robert Half Int'l Inc.*, 761 F.3d 326, 329 (3d Cir. 2014) (same); *Eshagh v. Terminix Int'l Co., L.P.*, 588 F. App'x 703, 704 (9th Cir. 2014) (unpublished).

"An arbitration agreement need not recite verbatim that the 'parties agree to arbitrate arbitrability' in order to manifest 'clear and unmistakable' agreement. *Houston Refining, L.P. v. United Steel, Paper and Forestry, Rubber, Mfg.*, 765 F.3d 396, 410 n. 28 (5th Cir.2014) (quoting *Petrofac, Inc. v. DynMcDermott Petroleum Operations*, 687 F.3d 671, 675 (5th Cir.2012)). Rather, "[a] delegation provision that gives an arbitrator the authority to resolve disputes relating to the 'enforceability,' 'validity,' or 'applicability' of an arbitration agreement constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability." *W.L. Doggett LLC v. Paychex, Inc*., 92 F.Supp.3d 593, 597 (S.D.Tex.2015) (collecting cases).

The Parties' arbitration agreement herein contains a clear and unmistakable agreement that the arbitrator will decide any and all gateway questions of arbitrability. The arbitration agreement not only provides that "any and all claims or controversies . . . in any way relating to" the Agreement will be submitted to binding arbitration, but further states this "include[es] disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement . . ." Doc. No. 1-1, p. 8.  With this language the Parties' have delegated the determination of arbitrability to an arbitrator, not the Court. *See*, *e.g*., *Jones v. Waffle House, Inc*., 866 F.3d 1257, 1267–68 (11th Cir. 2017) (finding a clear and unmistakable

5

intent to arbitrate all gateway issues when the delegation clause stated the arbitrator "shall have authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable."); *Kubala v. Supreme Prod. Servs., Inc*., 830 F.3d 199, 203–04 (5th Cir. 2016) (finding a valid delegation clause when the agreement stated the arbitrator would rule on "any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation.").

Brookdale cites the Fourth Circuit case of *Del Webb* in support of its argument that it is exclusively for the court to decide whether an agreement provides for class-wide arbitration. However, *Del Webb* merely brings Fourth Circuit law in line with many other circuits that have recognized that the availability of class-wide arbitration is a substantive, gateway question concerning arbitrability and not a procedural issue. In doing so, the Fourth Circuit recognized that the parties may delegate questions of arbitrability to arbitration if their agreement clearly and unmistakably so provides. *Del Webb*, 817 F.3d at 874. The arbitration provision at issue in *Del Webb* only provided generally that "every controversy or claim arising out of or relating to this Agreement shall be settled by binding arbitration…" *Id.* at 869. The *Del Webb* court concluded that this broad arbitration provision did not amount to a clear and unmistakable delegation of arbitrability. *Id*. at 877.

Unlike the arbitration provision in *Del Webb*, the provision herein delegates to the arbitrator any "disputes regarding interpretation, *scope*, enforceability, unconscionability, waiver, preemption and/or violability of th[e] Agreement . . ." Doc. No.1-1, p.8 (emphasis added). The determination of the availability of class arbitration necessarily involves a determination of the scope of the arbitration. *See Rickenbaugh v. Power Home Solar, LLC*, No.

19 CVS 244, 2019 WL 7018974, at *8 (N.C. Super. Dec. 20, 2019), *writ allowed*, 839 S.E.2d 352 (N.C. 2020). Accordingly, the Court finds that the Parties have clearly and unmistakably delegated to the arbitrator the question of whether class arbitration is available. The Court explicitly notes that in making such determination the Court takes no position on the merits of this question.

Despite the Court's finding, however, Defendant's Counterclaim must be resolved before the Court can formally compel arbitration. The outcome of the Counterclaim will determine who gets to appoint the arbitrator that will ultimately decide the issue of arbitrability, Weir's nominee, or both Brookdale *and* Weir's nominees. The Court therefore will defer ordering the Parties to arbitration until such counterclaim is resolved.

IT IS SO ORDERED.

Signed: August 5, 2021

Graham C. Mullen
United States District Judge