IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20CV293-GCM

| | |
|---|---|
| BROOKDALE SENIOR LIVING INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>RACHEL ELISE WEIR, as Executrix of the )<br>Estate of Jean Howard, )<br>)<br>Defendant. )<br>_____) | ORDER |

This matter is before the Court upon Plaintiff/Counter Defendant Brookdale Senior Living, Inc's ("Brookdale") Motion for Summary Judgment on Defendant/Counter-Plaintiff Rachel Weir's ("Weir" or the "Estate") Counterclaim (Doc. No 50), as well as Weir's Motion for Summary Judgment as to the declaratory relief requested in her Counterclaim and Brookdale's Affirmative Defenses to the Counterclaim. (Doc. No. 51).

I. FACTUAL BACKGROUND

Brookdale owns and operates assisted living facilities. Weir is the Administrator of the Estate of Jean Howard, who was a resident at an assisted living facility in Charlotte, North Carolina owned and operated by Brookdale. In April of 2020, Weir sent Brookdale a Class Arbitration Demand seeking damages on behalf of the Estate and a class of similarly situated individuals for unfair and deceptive trade practices, breach of contract, unjust enrichment, and intentional interference with a contractual relationship. *See* Doc. No. 1-5. Defendant alleges in the underlying arbitration that Brookdale targeted frail and elderly individuals requiring daily assistance with two or three activities of daily living and systematically and deceptively lead

1

them and their families to believe that Brookdale would provide enough staff to meet the collective care needs and daily living services of its resident populations. *Id.* Defendant alleges that Brookdale systematically fails to fulfill that promise by chronically understaffing its facilities pursuant to corporate-driven and uniform staffing policies and practices. *Id.*

The Residency Agreement (the "Agreement") contains a mandatory arbitration clause (Doc. No. 1-1),[1] which requires that a resident's Demand for Arbitration be submitted to Timothy Cesar (the Vice-President of Brookdale's legal department) "via certified mail, return receipt requested." Doc. No. 1-1, p. 9. The arbitration clause further provides in pertinent part as follows:

> 5. The arbitration panel shall be composed of one (1) arbitrator. Subject to the requirements section A.6 [precluding bias], the parties shall agree upon an arbitrator that must be a member of the North Carolina Bar with at least ten (10) years of experience as an attorney. If the parties cannot reach an agreement on an arbitrator within twenty (20) days of receipt of the Demand for Arbitration, then each party will select an arbitrator. These arbitrators will act only for the purpose of appointing a sole arbitrator to hear the case, subject to the criteria above. If either party fails to select their arbitrator within the (20) days mentioned above, they effectively forfeit their right to choose an arbitrator.

*Id*.

On April 29, 2020, Gary Weir,[2] acting as Administrator of the Estate of Jean Howard and through counsel, Mr. Gugenheim, mailed the Demand for Arbitration to Brookdale. The Demand was sent via certified mail, but without return receipt requested, as directed in the Agreement. It is undisputed that no signature —either written or electronic—was obtained from any Brookdale representative upon delivery of the Demand. On May 11, 2020 at 9:24 am, the

---

[1] The Court previously entered an Order determining that the questions presented in Brookdale's Complaint are for the arbitrator to decide, but that Defendant's Counterclaim must be resolved before the Court can formally compel arbitration. *See* Doc. No. 43.

[2] Gary Wier, the individual originally appointed to administer the Estate, passed away on May 22, 2020. Rachel Elise Wier was thereafter designated as the Estate's successor executrix and was substituted as the Plaintiff herein.

USPS delivered the Demand for Arbitration to Brookdale to its "front desk, reception area, or mail room."

At the time the Demand was delivered to the mailroom at Brookdale's Milwaukee Office, the COVID pandemic had just begun, and the State of Wisconsin had implemented a "Safer at Home Order." *See* Doc No. 50-11. The Safer at Home Order provided "Professional Services, such as legal or accounting services…. Shall, to the greatest extent possible, use technology to avoid meeting in person, including virtual meetings, teleconference, and remote work (i.e., work from home)." *Id*. at p.14. Accordingly, at the time the Demand was delivered, the individuals working in Brookdale's legal department (specifically including Mr. Cesar) were not physically present in the Milwaukee Office and were instead working remotely. At that time, Mr. Cesar tasked an assistant manager in the legal department, Mr. Michael Mueller, with going into the Milwaukee Office at least once per week to retrieve the mail from the mailroom. On May 15, 2020, Mr. Mueller went to the Milwaukee Office to retrieve the mail from the mailroom and discovered the Demand. Mr. Mueller immediately sent the Demand to Mr. Cesar via email. Mr. Cesar then forwarded the Demand to counsel on that same day, stating "Just received."

On May 29, 2020, Mr. Gugenheim emailed counsel for Brookdale, stating "Plaintiff hereby designates" Mr. Sam McGee as arbitrator pursuant to the Arbitration Agreement. On June 4, 2020, twenty-days after Mr. Cesar actually received the Demand, Brookdale's counsel emailed Mr. Gugenheim to inform him of the name of Brookdale's selected arbitrator.

The Counterclaim herein seeks a declaration that "under the terms of Brookdale's Arbitration Clause, (1) Brookdale forfeited its right to nominate an arbitrator by failing to nominate an arbitrator within 20 days of receiving the Class Demand, and (2) the arbitrator that

3

will oversee the arbitration is to be appointed solely by Gary Weir's nominee." Doc. No. 18 at 4-8.

## II. DISCUSSION

### A. Summary Judgement Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.*

While courts view the evidence in the light most favorable to the nonmoving party, a party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252. The summary judgment inquiry thus scrutinizes an opposing party's case to determine whether it has "offered proof, in the form of admissible evidence, that could carry the burden of proof" at trial. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

### B. Service of the Demand for Arbitration

Brookdale argues that the Court should grant summary judgment in its favor as to the Estate's Counterclaim because the Estate failed to serve the Demand via certified mail, return receipt requested, as directed in the Agreement. It contends that had the Estate properly served the Demand there would be no issue as to when the Demand was "received" by Brookdale.

4

While the Court agrees that proper service may have avoided the need for this dispute, the Estate's failure to serve the Demand return receipt requested is not fatal to its Counterclaim.

In support of its argument, Brookdale cites the Fourth Circuit case of *Choice Hotels Int'l v. SM Property Mgmt., LLC*, 519 F.3d 200 (4th Cir. 2008). *Choice Hotels* involved a motion to vacate an arbitration award because the movant never received the demand for arbitration. The arbitration agreement in that case required that the demand "must be in writing, must be personally delivered or mailed by registered or certified mail, return receipt requested … at the Designated Representative's address." *Id.* at 207-08. However, when the claimant sought to initiate arbitration proceedings against the opposing party, the claimant mailed the demand for arbitration to the opposing party's personal addresses—not the address of the designated representative as specified in the parties' agreement. *Id*. The Fourth Circuit affirmed vacatur of the award because the claimant failed to serve the demand in accordance with the procedures set forth in the language of the arbitration agreement. Due to this failure, the movants never received notice of the arbitration until after an award was issued.

As the Estate correctly points out, *Choice Hotels* is highly distinguishable from this case. In *Choice Hotels*, the arbitration demand was sent to the wrong people and the wrong addresses, such that the defendants did not have actual notice of the arbitration. *See id.* at 205, 208. Here there is no dispute that Brookdale actually received the Demand. In *21st Financial Services L.L.C. v. Manchester Financial Bank*, 747 F.3d 331 (5th Cir. 2014), the defendants sought vacatur of an arbitration award because the plaintiff had not served the demand by registered or certified mail, as the parties' contract required. The district court rejected the defendants' argument because the defendants had actual notice of the proceedings, and the Fifth Circuit affirmed on that basis. 747 F.3d at 337-38. In its decision, the court noted that two other circuits

5

have held that defects in notice are immaterial if the defendant has actual notice. *See id*. at 337, n.13 (citing *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 332 (7th Cir. 1995) and *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 845 (2d Cir. 1977)). In citing and distinguishing *Choice Hotels*, the Fifth Circuit explained that "in upholding a vacatur, the [*Choice Hotels*] court noted that the parties did not have actual or constructive notice of the arbitration." *See 21st Fin*., 747 F.3d at 338, n.14 (citing *Choice Hotels*, 519 F.3d at 208). Because it is undisputed that Brookdale had actual notice of the Demand, the Estate's failure to send the Demand return receipt requested does not bar its Counterclaim.

### C. Brookdale's Selection of an Arbitrator

In its Counterclaim, the Estate alleges that Brookdale failed to appoint an arbitrator within twenty days of receipt of the Demand and has thus forfeited its right to select an arbitrator. As quoted above, the arbitration clause requires that Brookdale select as arbitrator "within twenty (20) days of *receipt* of the Demand for Arbitration." (emphasis added). The Estate contends that the Demand was received on the day it was delivered: May 11, 2020. Brookdale's selection of an arbitrator on June 4 was thus outside the twenty-day deadline. Brookdale claims that its selection was timely because it actually received the Demand on May 15.

The Court agrees with Brookdale. The Estate conflates the terms delivery and receipt. Where—as here—a contract term is unambiguous, the court must give "ordinary words their ordinary meaning." *Internet East, Inc. v. Duro Comm., Inc*., 553 S.E.2d 84, 87 (N.C. Ct. App. 2001). Courts routinely look to the dictionary definition of a word to construe its ordinary meaning. *See id.* Merriam Webster defines the verb "receipt" as "the act or process of receiving," and the word receive in this context is defined as "to come into possession of." On

6

the other hand, the word deliver in this context is defined as "to take and hand over to or leave for another." Coming into possession of something is certainly not the same as it simply being left for another. In fact, the circumstances herein demonstrate the precise difference between those two things: the Demand was left for Brookdale at its empty Milwaukee Office on May 11, 2020, whereas Brookdale did not come into possession of the Demand until May 15, 2020, when Mr. Mueller retrieved it from the mailroom and sent it to Mr. Cesar.

Moreover, the Agreement itself makes a distinction between the words receipt and delivery. In the provision at issue, the Agreement provides that the arbitrator must be selected within twenty days "of **receipt**" of the Demand. Doc. No. 1-1, p. 9 (emphasis added). In another section, the Agreement provides that other types of notices (particularly those regarding termination of the Agreement) "shall be deemed given based upon the date personally **delivered** or upon the date postmarked." *Id*. at p.13 (emphasis added). North Carolina courts adhere to the general rule that a contract must be construed "as a whole" and that terms in dispute "must be appraised in relation to all other provisions." *WakeMed v. Surgical Care Affiliates, LLC*, 778 S.E.2d 308, 313 (N.C. Ct. App. 2015) (citation omitted). The fact the words "receipt" and "delivery" are used distinctly in two different provisions of the Agreement demonstrates these words are not intended to be construed synonymously.

Brookdale selected its arbitrator within twenty days of its receipt of the Demand, as provided in the Agreement. Accordingly, summary judgment in favor of Brookdale is granted as to the Estate's Counterclaim.[3] Pursuant to the Court's Order of August 6, 2021, the Court hereby compels the Parties to proceed to arbitration as provided in the Agreement.

---

[3] As the Court finds that Brookdale's selection of an arbitrator was timely the Court need not address Brookdale's Affirmative Defenses.

IT IS THEREFORE ORDERED that Plaintiff/Counter Defendant's Motion for Summary Judgment on Defendant/Counter-Plaintiff Weir's Counterclaim (Doc. No. 50) is hereby GRANTED, and Defendant/Counter-Plaintiff Weir's Motion for Summary Judgment (Doc. No. 51) is hereby DENIED; and

IT IS FURTHER ORDERED that the Motion to Compel (Doc. No. 29) is hereby GRANTED pursuant to the Court's Order of August 6, 2021 and the Parties are directed to proceed to arbitration forthwith in accordance with the Agreement.

Signed: January 27, 2022

Graham C. Mullen
United States District Judge